George L. DAVIDSON et al., Plaintiffs,

v.

The KANSAS CITY STAR COMPANY et al., Defendants.

Don EGAN et al., Plaintiffs,

v.

The KANSAS CITY STAR COMPANY et al., Defendants.

Nos. 12268 and 12525.

United States District Court
W. D. Missouri, W. D.

Feb. 23, 1962.

Ray D. Jones, Jr., and Carrol C. Kennett, and Hammond C. Woods and Ben W. Swofford, Kansas City, Mo., for plaintiffs.

Watson, Ess, Marshall & Enggas, Kansas City, Mo., for defendants.

GIBSON, District Judge.

Plaintiffs bring the instant actions under the provisions of Sections 4 and 16 of the Clayton Act (Sections 15 and 26, Title 15 U.S.C.A.), claiming damages and injunctive relief against defendants for alleged violations of Sections 1 and 2 of the Sherman Act (Sections 1 and 2, Title 15 U.S.C.A.), and Sections 2 and 3 of the Clayton Act (Sections 13 and 14, Title 15 U.S.C.A.). These two cases may be considered together.

Plaintiffs allege that they are independent contractors, referred to as "Car-

riers" who purchase defendants' newspapers for cash at wholesale prices and sell them at retail prices within fixed boundaries. They are motorized, that is, they throw the papers onto the customers' homes from moving vehicles. They allege that their sole profit is derived from the difference between the wholesale cost of the newspapers and the retail price they receive for them. The plaintiffs each entered into a contract with the defendants which provided in part that plaintiffs will not sell papers outside of the district assigned to them and that they would not sell nor circulate any other newspaper except with the written consent of defendants. Plaintiffs allege that these contracts were not the result of any negotiations, but were forced upon plaintiffs, as defendants refused to deal with any Carrier who refused to agree to the terms of the contracts, and since no Carrier can earn his livelihood without the patronage of the defendants, this amounted to coercion.

Plaintiffs contend that this "tying Agreement" substantially lessened competition, apparently invoking Section 3 of the Clayton Act, in that plaintiffs have the capacity and ability to deliver other newspapers, but defendants have refused to allow them to do so.

Plaintiffs further allege that defendants discriminated against certain Carriers by selling newspapers to other favored Carriers at a wholesale price lower than that charged plaintiffs, while at the same time, defendants set and enforced the retail price of all newspapers delivered by all home Carriers at the same price, and that, therefore, plaintiffs were forced to pay more for their newspapers than the favored Carriers and were thereby damaged. Plaintiffs also contend that defendants favored certain Carriers by consigning newspapers with return privileges to certain favored Carriers, granting early delivery rights to certain favored Carriers, and allowing certain Carriers to retail the newspapers at higher prices than uniformly set by defendants.

Plaintiffs pray for injunctive relief and for treble damages in the sum of Four million five hundred twenty-five thousand seven hundred fifty-nine and 65/100 Dollars ($4,525,759.65) in Case No. 12268 and for Two million six hundred fourteen thousand two hundred fifty-three and 01/100 Dollars ($2,614,253.01) in Case No. 12525.

No answer has been filed as yet in either case, and defendant has filed a motion to dismiss in both cases. A previous motion to dismiss was sustained by this Court in case No. 12268–2 on June 1, 1959, and leave was given at that time to file an amended complaint for *injunctive relief only* in that case. It is the amended complaint in case No. 12268–2 and the original complaint in case No. 12525–1 to which the instant motions to dismiss apply. Defendant contends, as grounds for the instant motions, that the complaints fail to state a cause of action in favor of plaintiffs. For the purposes of the instant motions, the allegations contained in the complaints must be taken as true. The sole question presented then is, whether under the allegations of fact as stated by plaintiffs, a cause of action has been stated against defendants under the provisions of the anti-trust statutes.

Plaintiffs have not specified in their complaint as to which of the sections of the anti-trust laws defendants have violated, other than a general allegation that they have violated Sections 1 and 2 of the Sherman Act and Sections 2 and 3 of the Clayton Act. They have not specified which acts of conduct violate specific provision of the anti-trust law. The amended complaint consists of only one count that includes claims under Sections 1 and 2 of the Sherman Act, Section 2(a), (b), (c), (d) and (e) of the Clayton Act as amended by the Robinson-Patman Act, and Section 3 of the Clayton Act. The plaintiffs do not state in their amended complaint what particular part or sections of these different Acts are violated by the defendants nor do they allege with particularity the acts which constitute the claimed violation. As a result, the Court, along with the defendants, is required to speculate on the legal foundation claimed by plaintiffs for each

factual charge delineated in the complaint. This is not proper pleading. As stated in Hennepin Theatre Corporation v. Paramount Pictures, Inc., 1 F.R.D. 621 (D.C.Minn.1941, p. 622):

"The difficulty which arises in construing plaintiff's * * * complaint is * * * due * * * primarily to the failure of the plaintiff to distinguish between the alleged violations of the Sherman Anti-Trust Act and the Clayton Act, * * * These acts are independent enactments, and the violation of either constitutes a separate offense. Certainly, in order to plead, these defendants should know of the exact wrong with which they are charged."

It is apparent that many of the sections of the statutes enumerated in plaintiffs' complaint have no application to the factual situation herein alleged. However, in order to pass upon the defendant's Motion to Dismiss for failure to allege facts upon which plaintiffs are entitled to relief, the Court will consider, as best it can, the alleged factual situation in the light of each section alleged to have been violated.

## SHERMAN ACT, SECTION 1

Section 1 of the Sherman Act forbids contracts, combinations, or conspiracies "in restraint of trade or commerce among the several States, or with foreign nations."

■ As was stated in the order of this Court of June 1, 1959, "There are no allegations contained in the instant complaint alleging any facts from which a 'combination' or 'conspiracy' by defendant may be inferred." The only defendants are the Kansas City Star Co. and its officers. They cannot conspire or combine amongst themselves and against themselves as they constitute one entity for the purposes of publishing a newspaper. This statement applies as well to the amended complaint. Thus, the only violation of Section 1 of the Sherman Act that is possible is a *contract* in restraint of trade or commerce.

Clearly, in this case, there existed a contract, but is it a contract of a type about which plaintiffs would have the right to complain? Clearly the statute implies that any actions brought under it should be brought against the parties who combined, conspired, or contracted to restrain trade or commerce. The only restraint of commerce plaintiffs have any standing to complain of is the restraint of the "home delivery market" for newspapers. Assuming, for the moment that the effect of the contract in question was to restrain commerce or trade, this contract was entered into between plaintiffs and defendants. Therefore, if there was a restraint of trade inherent in the contract, plaintiffs were in *pari delicto* with defendants. Such a person has no right to complain of the effect of the actions of which he had a part in bringing about. Eastman Kodak Co. v. Blackmore, 2 Cir., 277 F. 694. A contrary result may be indicated where the party has terminated his relationship with the accused party. Victor Talking Machine Co. v. Kemeny, 3 Cir., 271 F. 810. However, in this case there is every indication that plaintiffs are still under contract with defendants. Furthermore, the alleged facts indicate that, if there were contracts in restraint of trade, they were in existence already at the time plaintiffs entered into their own contracts with defendants, and plaintiffs knew of their existence and effect. This is a further militation against plaintiffs' recovery. (See Continental Securities Co. v. Michigan Cent. R. Co., 6 Cir., 16 F.2d 378).

■ The restraint of trade or commerce named in Section one of the Sherman Act means "unreasonable" restraint of trade or commerce. Standard Oil Co. of New Jersey v. United States, 221 U.S. 1, 31 S.Ct. 502, 55 L.Ed. 619. This is now well settled.

But the contracts entered into between plaintiffs and defendants had no effect of an unreasonable restraint on trade or commerce. The trade or commerce plaintiffs complain that the defendants have restrained is what they denominate the

"home delivery market." As plaintiffs apparently base their complaint on the fact that they are not allowed to distribute newspapers other than the "Kansas City Star" the "home delivery market" must be taken to include the delivery of all newspapers. The defendants have clearly restrained plaintiffs from delivering any other newspaper than their own. However, there is no allegation that defendants have attempted to restrain any person other than plaintiffs from delivering other newspapers, and in fact, plaintiffs themselves, had they not entered into the contracts in question, would have been free to deliver any newspaper they chose, and further, when their present contract expires, they will be free again to do so.

The fact that it may be more economically feasible for another newspaper to avail itself of defendants' already established carrier system should not enter into it. Presumably defendants were required, at some time in the past, to develop the carrier system as it now exists. Whether this was achieved through the use of the capital of defendants or that of the independent carriers is irrelevant. However, it was brought about, any other newspaper is free to develop their own carrier system in any manner it chooses. Defendants are not obliged to subsidize the carrier systems of their competitors.

■ Thus, it can be seen that the contract in question is not an unreasonable restraint on trade or commerce under Section 1 of the Sherman Act.

## SHERMAN ACT, SECTION 2

Section 2 of the Sherman Act prohibits persons from monopolizing, attempting to monopolize, combining or conspiring with any other person or persons, to monopolize any part of the trade or commerce among the several States, or with foreign nations.

■ Plaintiffs allege that defendants have violated this Section by monopolizing the "home delivery market." As was

stated previously, the "home delivery market" must be taken to mean the door-to-door delivery of newspapers by motorized carriers. The same reasoning applies here as applied under the discussion of Section 1 of the Sherman Act. Other newspapers are free to use whatever system they wish to deliver their papers. What the defendants have monopolized is the delivery of their own paper, "The Kansas City Star" by plaintiffs. Do they not have the right to contract the delivery of their own paper? The proper and responsible delivery of their own product is of major concern to defendant, Kansas City Star Co., and is a basic factor in the continued successful operation of their newspaper. In carrying out this facet of their operation are they legally bound to guarantee plaintiffs a certain profit, and if so, how much, and if so, must all of them receive the same profit? Plaintiffs' basic complaint is about themselves and not the effect of their contract on the public. Their complaint is they are not making enough money or that they could make substantial additional income if the restrictive clause on the sale and delivery of other newspapers would be deleted from their contract. The underlying purpose of the Sherman Act is to protect the public and not the individuals who enter into contracts that they claim are violative of the provisions of Sections 1 and 2 of the Sherman Act.

■ An excellent definition of monopolization is found in the case of American Tobacco Co. v. United States, 328 U.S. 781, 66 S.Ct. 1125, 90 L.Ed. 1575. In that case it was said,

"A correct interpretation of the statute and of the authorities makes it the crime of monopolizing, under § 2 of the Sherman Act, for parties, as in these cases, to combine or conspire to acquire or maintain the power to exclude competitors from any part of the trade or commerce among the several states or with foreign nations, provided they also have such a power that they are able, as a group, to exclude actual or po-

tential competition from the field and provided that they have the intent and purpose to exercise that power. See United States v. Socony-Vacuum Oil Co., 310 U.S. 150, 226, n. 59, 60 S.Ct. 811, 84 L.Ed. 1129 and authorities cited."

■ It can be readily seen that defendants here had no such power. They could, in no way, prevent other newspapers from distributing their publications from door-to-door by whatever means the other newspapers might choose, except that these plaintiffs might not do so, at least until their contracts expire. Thus, there could be no exclusion of other newspapers, defendants' competitors, from the "home delivery market." The circuitous reasoning urged by plaintiffs, that because of the defendants' refusal to allow them to deliver other newspapers, and that therefore, the other newspapers were damaged, and that in turn, plaintiffs were damaged because they could not deliver other newspapers, is of no merit. Plaintiffs, before entering into their contracts with defendants, could have delivered any newspapers they wished. Their complaint, reduced to its basic terms, is that because of the economic fact, as alleged by plaintiffs, that defendants' newspaper constitutes over 90 per cent of the circulation of newspapers in the Kansas City Metropolitan area, it is virtually impossible for any carrier to exist without delivering newspapers for defendants.

It is not necessary to the present proceedings to decide whether there was a monopoly in regards to the defendant's competitors, the other newspapers in the area. Suffice it to say that plaintiffs voluntarily entered into their contracts with defendants and thereby gave up their rights to deliver any other newspaper. If they had cared to, plaintiffs could have delivered any other newspaper they wished, or refrained from delivering any newspapers at all.

In short, while the defendants may have sole control of the "home delivery market" of the "Kansas City Star" they have no monopoly, nor do they have the power necessary to monopolize the "home delivery market" of any other news publication.

## CLAYTON ACT, SECTION 2

Section 2 of the Clayton Act prohibits price discrimination between different purchasers from a person engaged in commerce, where the commodities sold are for consumption, use or resale in interstate commerce, and where the effect of the discrimination is to substantially lessen competition or tend to create a monopoly in any line of commerce, or to injure, destroy or prevent competition with any person who either grants, or knowingly receives the benefit of such discrimination, or with customers of either of them.

■ Plaintiffs allege that defendants have violated this Section by granting certain favored carriers lower wholesale prices on newspapers than are offered to plaintiffs, and that thereby plaintiffs income is lowered. The allegation that defendants fixed the retail prices may be dismissed, as it is clear that Section 2 of the Clayton Act has no bearing on resale price fixing and deals only with a person's selling price to his own customers. Great Atlantic & Pacific v. Cream of Wheat Co., 2 Cir., 224 F. 566, aff'd, 2 Cir., 227 F. 46.

■ Price discrimination under Section 2 of the Clayton Act cannot lessen competition between customers unless the discrimination is between customers *competing* in the distribution of the commodity. Chicago Sugar Co. v. American Sugar Refining Co., 7 Cir., 176 F.2d 1. In the instant case, it is alleged that all Carriers in defendants' system were assigned a separate district in which to resell the newspapers. No carrier could sell in another's territory and, in turn, no other Carrier could sell in his territory. The effect of this is clear. It could make no possible difference that one Carrier was given more favorable whole-

sale prices than another, since he could not take advantage of this more favorable price in reselling to any other Carrier's customers. There was in fact, no competition between plaintiffs and any other Carrier of the "Kansas City Star."

■ Further, plaintiffs complaint is fatally defective in respect to this specific statute. Under Section 2 of the Clayton Act it is necessary to show in the complaint that the goods in connection with the sale of which the discrimination was allegedly practiced were in the flow of interstate commerce or affected thereby. Sun Cosmetic Shoppe v. Eliz. Arden Sales Corp., D.C., 81 F.Supp. 547. Plaintiffs' complaint does not show this.

### CLAYTON ACT, SECTION 3

Section 3 of the Clayton Act provides, where pertinent, that is is illegal for a person engaged in interstate commerce to sell or lease on the condition that the purchaser shall not use or deal in the goods of a competitor if the effect of the agreement will be to lessen competition thereby.

■ The reasoning in regard to Section 1 of the Sherman Act is also applicable here. Plaintiffs, as parties to the contracts in question, are precluded from suing the other party. Only other newspapers, defendants' competition, or the government, in the public interest, has that right.

It is not necessary here to decide whether the effect of the agreement will be to lessen competition thereby. If any competitor is injured by this contract, plaintiffs might be able to have their contracts set aside, but they are not entitled to relief in the instant action.

It appears to the Court that this case represents a private grievance between some of the carriers and the defendant, Kansas City Star Co., relating solely to alleged (1) price discrimination; and (2) the restrictive feature of the carriers' contract prohibiting them from selling or delivering any other newspaper without the consent of the defendant, Kansas

City Star Co. There is no showing or properly alleged allegation that in this particular as applied to the plaintiffs, who are not in competition with each other, that interstate commerce is affected or that competition has been lessened or that such discrimination has substantially tended to lessen competition or tended to create a monopoly in any line of commerce or to injure, destroy or prevent competition.

■ While the Court is hesitant to dispose of a complaint on a motion to dismiss, it is felt that where the plaintiffs cannot establish any meritorious claim against defendants under any theories proposed in their pleadings that the motion to dismiss should be sustained. The Court's duty is well stated in Neumann v. Bastian-Blessing Co., 70 F.Supp. 447 (N.D.Ill.1947) l.c. 450:

> "It has been stated that litigation should not be decided on pleadings only. Cases of this nature result in long and costly trials, and if it appears reasonably certain after due consideration of the questions involved that plaintiff cannot sustain his claim, it is the duty of the court to dismiss the action. The court therefore allows defendant's motion to dismiss Amended Count I of the complaint. * * * "

Under the situation presented in this complaint, it appears that, at least as between the parties involved, the defendants have a right to set up their own carrier system by either the use of their own employees or independent contractors, and in this circumstance they can require the exclusive service of either the employees or the independent contractors.

In the prior criminal anti-trust case in Division Three of this court, United States v. Kansas City Star et al., Western District of Missouri, Western Division, Criminal Number 18444, these same defendants were involved. One count of the indictment in that case alleged that defendants did:

> "(m) Induce and coerce newspaper carriers who sell and distrib-

ute defendants' newspapers to contract to refrain and to refrain from the sale and distribution of newspapers, shopper publications or circulars published or printed by others than the defendants;"

Defendants moved to strike this portion of the indictment, among others. In sustaining this motion, Judge Duncan stated:

"I can conceive of no circumstance under which the facts charged in these two subparagraphs would be violative of the Anti-Trust Laws. As to subparagraph (m) certainly the defendants had a right to require their carriers to work for them exclusively and for no other person, if they desired to do so. If the defendants had sought to prevent news dealers generally from selling any publication except their own, that might provide some basis for a charge of violating the law, but to limit their own newspaper carriers to the sale and distribution of their own papers, in my opinion could in no way be in restraint of trade."

The matter of remuneration or price to the independent contractors is one of contract. The plaintiffs are under no coercion to continue the contract under the terms offered if they do not so desire. If such contracts do not appear to be profitable to the parties involved, they, of course, can proceed to cancel in accordance with the terms of the contract. It is certainly not the province of the Court to set the price or different prices at which the newspapers may be purchased or sold. That appears to be within the proper realm of negotiation between the parties resting primarily with the defendant, Kansas City Star Co., in setting the price it wishes to charge the public for its papers.

For the reasons herein stated, the motion to dismiss the amended complaint is sustained.

IT IS SO ORDERED.