## SUN COSMETIC SHOPPE, Inc. v. ELIZABETH ARDEN SALES CORPORATION.

## MIRROR COSMETIC SHOPPE, Inc. v. ELIZABETH ARDEN SALES CORPORATION.

### Civ. 47-258, 47-259.

United States District Court
S. D. New York.

Dec. 4, 1948.

Morris Siegel, of New York City, for plaintiffs.

Townley, Updike & Carter, of New York City (J. Howard Carter and John R. Schoemer, Jr., both of New York City, of counsel), for defendant.

HULBERT, District Judge.

Defendant moves for summary judgment or in the alternative seeks an order dismissing the complaint in each action, urging that this court lacks jurisdiction over the subject matter of the actions and further contends that the complaints are insufficient in law.

The plaintiffs, Sun Cosmetic Shoppe, Inc. and Mirror Cosmetic Shoppe, Inc., are New York corporations, and bring these actions under the Robinson-Patman Act, 15 U.S.C.A. § 13, to recover from the defendant $46,800 in each action, as treble damages for alleged violations of the Act.

Plaintiffs, engaged in the retail sale of cosmetics, allege that defendant designated plaintiffs in 1938 as agencies to sell its products, that up to May 1948 defendant represented to plaintiffs that it sold its goods to plaintiffs at the same price and upon the same terms as it was affording to plaintiffs' competitors. It is further claimed by plaintiffs that demonstrators were furnished to some of defendant's customers, who were competitors of plaintiffs, but not to the plaintiffs. Plaintiffs also allege that they continued to purchase defendant's products until May 1948, when they learned of the alleged discrimination, i. e. defendant was making rebates or allowances to plaintiffs' competitors in the City of New York and furnishing some of them with services and facilities not afforded to plaintiffs.

Defendant, Elizabeth Arden Sales Corp., is a Delaware corporation, and "it has its offices and principal place. of business at 681 Fifth Avenue New York, New York." All of defendant's officers have business addresses in this state, and most of them reside here as well.

Prior to January 1, 1948, all cosmetics manufactured by Elizabeth Arden, Inc., a New York corporation, were purchased from it by defendant for resale to cosmetic retailers. These cosmetics were manufactured in New York.

On January 1, 1948, defendant leased the manufacturing plant from Elizabeth Arden, Inc., and since that time has manufactured the cosmetics. "It is at that location alone that Elizabeth Arden cosmetics are manufactured, packaged in containers, and made ready for shipment to retailers."

Plaintiffs' orders were made and filled in New York from stocks held by defendant at its Long Island City, N. Y., plant. Deliveries were made wholly within the City of New York, where they were offered by plaintiffs for sale to the retail trade.

On the argument of these motions it was admitted that defendant is generally engaged in interstate commerce. Defendant also admits that some of the raw materials used in the manufacture of cosmetics were acquired by Elizabeth Arden, Inc., or by Elizabeth Arden Sales Corp. from sources outside the state of New York.

Defendant argues that since the wrongs complained of took place wholly within intrastate commerce there has been no violation of the Robinson-Patman Act;

that merely because defendant is generally engaged in interstate commerce does not mean that defendant is subject to that Act in regard to the transactions in question here.

Plaintiff's position, on the other hand is that since the defendant has engaged in interstate commerce generally it "thereby became amenable to the provisions of the Robinson-Patman Act in all of its transactions including those that might have been local or intrastate." The transactions involved in these actions, according to plaintiffs, are part of the overall picture of interstate activity engaged in by the defendant.

The applicable sections of the statute involved in this case are subdivisions (a) dealing with unlawful price discrimination, (d) and (e) of section 1 of the Robinson-Patman Act, 15 U.S.C.A. § 13, which read as follows:

"(d) It shall be unlawful for any person *engaged in commerce* to pay or contract for the payment of anything of value to or for the benefit of a customer of such person *in the course of such commerce* as compensation or in consideration for any services or facilities furnished by or through such customer in connection with the processing, handling, sale, or offering for sale of any products or commodities manufactured, sold, or offered for sale by such person, unless such payment or consideration is available on proportionally equal terms to all other customers competing in the distribution of such products or commodities.

"(e) It shall be unlawful for any person to discriminate in favor of one purchaser against another purchaser or purchasers of a commodity bought for resale, with or without processing, by contracting to furnish or furnishing, or by contributing to the furnishing of, any services or facilities connected with the processing, handling, sale, or offering for sale of such commodity so purchased upon terms not accorded to all purchasers on proportionally equal terms." (Italics for emphasis.)

While the latter subdivision does not contain the clauses "engaged in com-

merce" and "in the course of such commerce" that subdivision (d) contains, this language is to be read into subdivision (e). Elizabeth Arden Sales Corp. v. Gus Blass Co., 8 Cir., 1945, 150 F.2d 988, 161 A.L.R. 370, certiorari denied 326 U.S. 773, 66 S.Ct. 231, 90 L.Ed. 467; Elizabeth Arden, Inc., v. Federal Trade Commission, 2 Cir., 1946, 156 F.2d 132.

The Robinson-Patman Act grew out of an investigation made by the Federal Trade Commission, aided by a strong lobby. Its purpose was to curb the advantageous buying position of large chain stores. 46 Yale Law Journal 447. The act does not, however, affect chain stores alone; rather by the use of broad language it is applicable to all classes of marketing. 80 Cong.Record 6674 (April 30, 1936).

There is no doubt that the defendant is a "person engaged in (interstate) commerce". Thus the ultimate question for determination here is whether the transactions which form the basis of plaintiffs' causes of action occurred "in the course of such commerce".

In considering this question it is well to look into the background of the Robinson-Patman Act to determine so far as possible the Congressional intent in using the phrase. Discussing subdivision (a) of section 13 of Title 15 U.S.C.A. (§ 2 (a) of the Clayton Act as amended by the Robinson-Patman Act) which contains the jurisdictional test above referred to, the Senate Report contains the following: "Section 2(a) attaches to competitive relations between a given seller and his several customers, and the clause is designed to extend its scope to discriminations between interstate and intrastate customers, as well as between those purely interstate. * * * When granted by a given seller to his customers in other States and denied to those within the State, they involve the use of that interstate commerce to the burden and injury of the latter. When granted to those within the State and denied to those beyond, they involve conversely a directly resulting burden upon interstate commerce with the latter. Both are within the proper and well-recognized pow-

er of Congress to suppress." Sen.Rep.No. 1502, 74th Cong. 2nd Session (1936).

In discussing jurisdiction under the Act, the Court of Appeals for the Third Circuit said the following in Shaw's, Inc., v. Wilson-Jones Co., 1939, 105 F.2d 331, 333: "Section 2 of the Act was designed, however, to prevent interference with the current of commerce. For the provisions of the Section to be operative, goods or commodities must be in the flow of commerce, or services must have been rendered or have been contracted to be rendered in connection with goods or commodities so placed. We may surmise that if the goods or commodities are not wholly within that flow, they at least must be touched by it, affected by it, so to speak. This we think to be the limitation imposed by Congress."

This test is quite broad, but it appears to be in line with the Congressional intent in enacting the statute, as evidenced by the above quotation from the Senate Report. An examination of the complaint in this action reveals that it does not meet this test as it now stands. The facts alleged have been referred to above. The discrimination complained of is referred to paragraphs eighth and eleventh which read as follows:

"Eighth: That during the time that the plaintiff maintained such agency for the sale and distribution of the defendant's products, the defendant represented to the plaintiff that the goods and merchandise which it sold and would sell to the plaintiff would be sold at the same prices and upon the same terms as similar goods and merchandise which it was then selling and intended to sell to its other customers, located in the *City of New York, State of New York.*

"Eleventh: That subsequent to May, 1948, the plaintiff learned that the defendant had discriminated against it in the price of the goods and merchandise sold to it, and had paid and contracted to pay to its competitors in the *City of New York, State of New York,* by rebate or allowance, something of value, and furnished to a number of its competitors *in the City of New York,* services and facilities connected with the sale and offering for sale of such goods and merchandise so purchased upon terms not accorded to the plaintiff, * * *." (Italics supplied.)

It is to be noted that all the discrimination alleged in the complaint was between the plaintiffs and its *competitors in the City of New York.* However, on the argument of the motion, and in their brief, plaintiffs aver that they were "in competition with similar establishments in the State of New York, New Jersey, and other states." And "Demonstrators' services were furnished to many of defendant's customers in the City and State of New York and in other States of the United States."

The court, in its reluctance to dismiss a pleading, often follows one of two courses: (1) it exercises its discretion under Rule 12, Federal Rules of Civil Procedure, 28 U.S.C.A., and defers the determination of any legal issues raised thereunder by motion until the trial, cf. Equitable Life Insurance Society v. Saftlas, D.C.1940, 35 F.Supp. 62; Dysart v. Remington Rand, Inc., D.C.1939, 32 F.Supp. 477; Hawn v. America S. S. Co., W.D. N.Y., 1939, 26 F.Supp. 428; or (2) the court may grant the motion to dismiss the pleading but grant the pleader leave to amend his pleading to correct the defects, cf. Rule 15(a), F.R.C.P.

It appears that if plaintiffs amend their complaints to include the allegations made on the argument of this motion, the jurisdictional defects of the complaints will be remedied.

In accordance with the foregoing discussion the motions to dismiss the complaints are granted with leave to the plaintiffs to amend the complaints within 20 days after entry of an order hereon.

In view of this disposition of the motion to dismiss the complaints, the motion for summary judgment is denied without prejudice, and defendant's time to answer is hereby extended to 20 days subsequent to the filing of the amended complaint.

Settle order on notice.