Perry J. GAINES, etc., Plaintiffs-Appellants,

v.

CARROLLTON TOBACCO BOARD OF TRADE, INC., et al., Defendants-Appellees.

No. 17385.

United States Court of Appeals Sixth Circuit.

Dec. 13, 1967.

Paul R. Huddleston, Bowling Green, Ky., (Joseph R. Huddleston, Huddleston & Huddleston, Bowling Green, Ky., on the brief), for appellants.

John M. Berry, New Castle, Ky., (Smith, Reed, Yessin & Davis, Frankfort, Ky., Berry & Floyd, New Castle, Ky., on the brief), for appellees.

Before O'SULLIVAN, PHILLIPS and EDWARDS, Circuit Judges.

EDWARDS, Circuit Judge.

This is an appeal by appellants from a summary judgment entered by a United States District Judge for the Eastern District of Kentucky. The judgment gave the appellants injunctive relief under 15 U.S.C. § 26 (1964) for violations of the Sherman Antitrust Act, 15 U.S.C. § 1 (1964). It refused them any damages under the treble damages section of the Act, 15 U.S.C. § 15 (1964). The District Judge held that plaintiffs had in effect compromised and settled their claims for damages by their admitted conduct and were estopped from claiming damages. Neither party appeals from the injunctive relief which was granted.

Under Kentucky law, Ky.Rev.Stat. § 248.015 (1962), each tobacco market was organized by a Board of Trade charged with regulating tobacco sales by allocating selling time and space.

Plaintiffs are the owners of a tobacco auction warehouse in Carrollton, Kentucky, which was built in 1962 and opened for business in the 1962–63 tobacco selling season. Defendants are the Carrollton Tobacco Board of Trade—a nonprofit corporation owned by the tobacco sales warehouse operators.

The Board on February 2, 1959, had adopted a resolution which provided in effect that new warehouses or additions to existing warehouses would be allotted selling time during their first year of operation proportionately to 20% of the floor space added and that in each subsequent year another 20% would be considered in the computation until the full 100% was reached.

When plaintiffs were notified of the regulation stated above, they protested its legality. After some discussions, the Board of Trade adopted a resolution on November 2, 1962, which provided that a new warehouse (plaintiff's included) would receive 40% of the number of baskets which the added floor space will provide in the first sales season after completion and in addition 12% in each of the ensuing five years.

Plaintiffs and defendants operated under the terms of this resolution until a resolution identical in its terms to the 1959 resolution of the Carrollton Board of Trade was declared an unreasonable restraint of trade by the United States District Court for the Western District of Kentucky. See Bale v. Glasgow Tobacco Board of Trade, Inc., 223 F.Supp. 739 (W.D.Ky.1963), aff'd, 339 F.2d 281 (6th Cir. 1964). Thereupon plaintiffs filed the instant suit.

The District Judge in this case compared the Carrollton Board restrictions of November 2, 1962, to those held invalid in the *Bale* case and concluded that the 1962 regulation likewise constituted an unreasonable restraint of trade.

On the damage question, however, he denied plaintiffs any relief, holding:

"An examination of the entire record indicates beyond doubt that the amended regulation of November 2, 1962, was adopted as a compromise through the good offices of Mr. William B. Gess, as arbitrator, and that same was adopted in an effort to arrive at the settlement of the differences between plaintiffs and defendants. The plaintiffs apparently participated in the adoption of the amended regulation. * * *

"Moreover the plaintiffs acquiesced in that regulation until November 18, 1963. Their complete disenchantment with the regulation apparently arose in retrospect after Judge Swinford's decision in Bale v. Glasgow Tobacco Board of Trade, Inc., 223 F.Supp. 739 (supra), which was decided on November 4, 1963.

"In the opinion of the Court, the plaintiffs by their actions estopped themselves from asserting relief under the treble damages provision of 15 U.S.C.A. 15. The defendants' motion for a summary judgment is well taken as to the plaintiffs' claim for damages under said provision of the Act, and and said motion should be sustained to this extent."

■ We believe that the question of damages in this case cannot properly be determined on the record in this summary judgment proceeding. There are disputed facts which present "a genuine issue for trial." Fed.R.Civ.P. 56(e).

Also, our examination of this record does not provide undisputed facts showing any voluntary compromise and settlement of plaintiffs' treble damages claim. Plaintiffs clearly never signed any such release agreement as was held to defeat Duffy's claim in Duffy Theatres, Inc. v. Griffith Consolidated Theatres, Inc., 208 F.2d 316 (10th Cir. 1953), cert. denied, 347 U.S. 935, 74 S.Ct. 629, 98 L.Ed. 1085 (1954).

■ Further, it seems clear as a matter of law that such an agreement, if executed in a fashion calculated to waive damages arising from future violations of the antitrust laws, would be invalid on public policy grounds. Fox Midwest Theatres v. Means, 221 F.2d 173 (8th Cir. 1955); Westmoreland Asbestos Co. v. Johns-Manville Corp., 39 F.Supp. 117 (S.D.N.Y.1941), aff'd per curiam, 136 F.2d 844 (2d Cir. 1943); Johnson v. Joseph Schlitz Brewing Co., 33 F.Supp. 176 (E.D.Tenn.1940), aff'd, 123 F.2d 1016 (6th Cir. 1941).

And in a Sherman Act case, the Supreme Court has held:

"Local rules of estoppel which would fasten upon the public as well as the petitioner the burden of an agreement in violation of the Sherman Act must yield to the Act's declaration that such agreements are unlawful, and to the

public policy of the Act which in the public interest precludes the enforcement of such unlawful agreements. Cf. Morton Salt Co. v. G. S. Suppiger Co., 314 U.S. 488, 492, 493, 315 U.S. 788, 62 S.Ct. 402, 405, 86 L.Ed. 363." Sola Electric Co. v. Jefferson Electric Co., 317 U.S. 173, 177, 63 S.Ct. 172, 174, 87 L.Ed. 165 (1942).

We express no view now as to whether on remand the defense of *in pari delicto* may be available to defendants. See Crest Auto Supplies, Inc. v. Ero Mfg. Co., 360 F.2d 896 (7th Cir., 1966); Pennsylvania Water & Power Co. v. Consolidated Gas Elec. Light & Power Co., 209 F.2d 131 (4th Cir. 1953), cert. denied, 347 U.S. 960, 74 S.Ct. 709, 98 L.Ed. 1104 (1954); Northwestern Oil Co. v. Socony-Vacuum Oil Co., 138 F.2d 967 (7th Cir. 1943), cert. denied, 321 U.S. 792, 64 S.Ct. 790, 88 L.Ed. 1081 (1944). See also Note, In Pari Delicto and Consent as Defenses in Private Antitrust Suits, 78 Harv.L.Rev. 1241 (1965).

■ This defense could, however, pertain only to that portion of the damages which arose while plaintiffs were participating in the illegal arangement. Victor Talking Machine Co. v. Kemeny, 271 F. 810 (3rd Cir. 1921). And it would require findings of fact by the District Judge on whether or not plaintiffs were co-initiators of the conspiracy, see Crest Auto Supplies, Inc. v. Ero Mfg. Co., 360 F.2d 896 (7th Cir. 1966); Pennsylvania Water & Power Co. v. Consolidated Gas, Elec. Light & Power Co., 209 F.2d 131 (4th Cir. 1953), or were compelled to join it by dint of economic coercion. See Ring v. Spina, 148 F.2d 647, 160 A.L.R. 371 (2d Cir. 1945) (history on remand and subsequent appeal omitted); Simpson v. Union Oil of California, 377 U.S. 13, 84 S.Ct. 1051, 12 L.Ed.2d 98 (1964).

The judgment of March 24, 1966, is vacated, except as to paragraphs 1, 2, 3 and 4. The case is remanded for further proceedings not inconsistent with this opinion.