**ELRAY, INC., Appellant,**

v.

**CATHODIC PROTECTION SERVICE,**
**Appellee.**

**No. 944.**

Court of Civil Appeals of Texas,
Houston (14th Dist.).

Feb. 27, 1974.

---

Jack B. Manning, Travis G. Wilson, Bean & Manning, Houston, for appellant.

Percy D. Williams, Finis E. Cowan, Baker & Botts, Houston, for appellee.

TUNKS, Chief Justice.

The issue in this case is whether a certain agreement is in violation of the Texas anti-trust statute, Tex.Bus. & Comm.Code Ann. sec. 15.01 *et seq.*, V.T.C.A. (1968), and therefore void and unenforcible. The plaintiff, Elray, Inc., brought suit against Cathodic Protection Service for breach of a letter agreement and a purchase order.

The trial court granted summary judgment for the defendant, Cathodic, and Elray has appealed.

The letter agreement between the parties, dated July 3, 1969, read as follows:

This will constitute a letter-agreement between our two firms regarding your [Elray] manufacturing a polyethylene outerwrap for the pipeline industry. It is our intent to market this product through our own sales organization over the entire United States and foreign countries. We will bear all promotional and advertising costs connected with this marketing effort.

We will also complete the design of and furnish the chilled rollers for your extruder and will train your operator in the proper use of the equipment to produce the several thicknesses of outerwrap. While these rollers will be installed on your property, it is understood that they will belong to Cathodic Protection Service.

On your part you will agree to produce outerwrap to the specifications attached. Initial pricing will be as shown on the attached cost sheet to Cathodic Protection Service. This will be subject to upward or downward revision from time to time by mutual agreement. Also in return for our investment in the rollers, as well as the over all marketing effort, you agree not to manufacture a pipe outerwrap material for anyone else or manufacture a film for others who we can prove are utilizing same as a pipeline outerwrap.

This agreement is to be in force for a period of five years with an option to renew for an additional period.

We look forward to a long and mutually profitable association between our two companies.

Elray alleges that the total agreement also included a purchase order dated July 15, 1969. That purchase order was designated as a "Take or Pay Contract," and included the provision, "AS REQUIRED FOR ONE YEAR FROM DATE." Elray was to ship the completed plastic outerwrap rolls "AS DIRECTED ON EACH RELEASE."

Cathodic contends principally that the trial court did not err in granting summary judgment for it because the agreement is in violation of the Texas anti-trust statute. Section 15.02 provides in part that:

(b) A "trust" is a combination of capital, skill, or acts by two or more persons to (1) restrict, or tend to restrict, trade, commerce, aids to commerce, the preparation of tangible personal property for market, or the free pursuit of a lawful business . . . (3) prevent or lessen competition in (A) the manufacture, transportation, sale, or purchase of tangible personal property; . . . (5) agree (A) not to sell, dispose of, transport, or prepare tangible personal property for market or transportation . . . .

Section 15.03 prohibits agreements by which "two or more persons engaged in buying or selling tangible personal property . . . agree not to buy from or sell to another person tangible personal property."

■ The contract here in question does entail such a proscribed agreement. Such illegal contracts are void and unenforcible. Segal v. McCall Co., 108 Tex. 55, 184 S.W. 188 (1916). Elray argues, however, that the facts of this case validate the contract by bringing it under the "lease exception" to the general rule, and render the defense of illegality inapplicable, citing State v. Gulf Refining Co., 279 S.W. 526 (Tex. Civ.App.—Austin 1925, writ ref'd). The Gulf Refining Co. case is distinguishable. In that case an oil company leased gasoline pumps to a dealer for a nominal fee and an agreement not to sell the products of competitors through those pumps. This arrangement did not totally preclude the sale of competitors' products, and the court said:

The contract in question is, however, not exclusive, except in a limited sense. It

only inhibits the dealing with others in so far as such dealing may be curtailed or limited by prohibiting the handling of the products of others through Gulf equipment. State v. Gulf Refining Co., *supra* at 530.

In the present case, Elray was prohibited from manufacturing plastic outerwrap for Cathodic's competitors regardless of whether it was produced on the equipment furnished by Cathodic. Under the terms of the agreement, should Elray purchase additional machinery of its own or hire personnel which had not been trained by Cathodic, it would still be precluded from manufacturing for "anyone else" for five years. The anti-competition nature of this contract is the very thing the Texas anti-trust statute prohibits.

Elray further contends that the contract is not in violation of the Texas anti-trust statute because at the time it was executed Elray was not engaged in the business of manufacturing plastic outerwrapping, citing State v. Fairbanks-Morse & Co., 246 S. W.2d 647, 657 (Tex.Civ.App.—Dallas 1952, writ ref'd n. r. e.), the pertinent language of which is as follows:

> [T]he parties must be so engaged [in buying or selling] at time of making the agreement, for the simple reason that if one of the parties is not so engaged at the time, there can be no restriction of trade involved in his agreement to purchase from a particular *seller and no other.*

The court there went on to say that the parties also must be engaged in buying and selling the particular articles dealt with in the contract. That case involved an ultimate consumer who agreed to purchase all of its diesel engines from one seller.

■ Section 15.03, which concerns conspiracies to restrain trade, requires only that the conspirators be engaged in some buying or selling of tangible personal property. There is no express requirement that they be engaged in buying or selling the specific commodity involved. The Texas

anti-trust laws are to be strictly construed. *See* Climatic Air Distrib. of So. Tex. v. Climatic Air Sales, 162 Tex. 237, 345 S. W.2d 702 (1961). We therefore disagree with the contention that the interpretation placed upon that section in the Fairbanks-Morse case is controlling of the disposition of this case. Furthermore, Section 15.02, which defines "trusts," does not include such a requirement. The agreement in question constitutes a combination of skill to restrict "the preparation of tangible property for market." The contract is therefore also proscribed by that section.

■ Elray also contends that because of the interstate aspects of the contract (the product was to be marketed nationally and internationally) the Texas anti-trust laws are not applicable. It is true that the general rule is that interstate commerce is not subject to the Texas anti-trust laws. Albertype Co. v. Gust Feist Co., 102 Tex. 219, 114 S.W. 791 (1909). However, the Texas statute is applicable to those aspects of an agreement which affect intrastate commerce. In Segal v. McCall Co., *supra,* 184 S.W. at 190, the Texas Supreme Court said:

> When the contract relates wholly to interstate commerce, only the federal Anti-Trust Act could apply; but when the contract contains more, as in this case it does, than a contract for interstate shipment . . . it falls within the regulation of state law.

The Segal case involved a contract in which a Texas vendee agreed to resell at prices set by the New York vendor and to not sell the products of the vendor's competitors. In State v. Southeast Tex. Chap. of Nat. Elec. Con. Ass'n, 358 S.W.2d 711, 714 (Tex.Civ.App.—Texarkana 1962, writ ref'd n. r. e.), *cert. denied,* 372 U.S. 969, 83 S.Ct. 1094, 10 L.Ed.2d 131 (1963), a similar contention that the federal act preempted the state act was raised. In that case the court said:

> Preemption has always been decided on the basis of whether or not, as applied to this particular case, the State

laws are repugnant and in conflict with the Federal law . . . .

It concluded:

The state protection of its own commerce against conspiracies in restraint of trade which also violate interstate commerce, is supplementary to the Federal regulatory scheme.

 . In the present case the illegal contract was executed in Texas by a Texas partnership and a Texas corporation. The violative provision inhibited manufacturing which would have taken place in Texas. To hold that the mere fact that the product would ultimately be shipped to other states and foreign countries bars application of the Texas anti-trust laws would be an emasculation of those laws. The fact that the party which inserted such provision in the agreement for its own benefit is now able to defend a suit for breach of contract on the basis of illegality is not controlling. Such provisions are detrimental to the general public and must not be enforced.

Affirmed.