Sydell BERMAN et al., Appellants,

v.

CITY PRODUCTS CORPORATION et al., Appellees.

No. 5064.

Court of Civil Appeals of Texas, Eastland.

March 8, 1979.

Rehearing Denied April 12, 1979.

Harold B. Berman, Toby L. Gerber, Berman, Fichtner & Mitchell, Dallas, Johnny M. Moore, Mays, Moore, Dickson & Roberts, Sweetwater, for appellants.

Stanley P. Wilson, Abilene, Joseph L. Rand, Chicago, Ill., Jack Sayles, Abilene, Charles R. Griggs, Nunn, Griggs, Beall & Wilks, Sweetwater, for appellees.

McCLOUD, Chief Justice.

The controlling question in this antitrust case is whether a husband, who signs a lease agreement containing a covenant restricting competition, owns a "property interest" in the premises leased, if the premises are owned by his wife as her separate property.

Plaintiff, City Products Corporation, and intervenors, Z. S., Inc., and Zeno R. Smith, sued defendants, Sydell Berman, individually, and Sydell Berman and First National Bank in Dallas, as Independent Executors of the Estate of Max Berman, deceased (Berman), Perry Brothers, Inc., Freda Levy, a widow, I. A. Loeb and wife, Fannie Loeb, Morris Siegel and wife, Helen Siegel, William Sheridan and wife, Hattie Sheridan, and A & I Levy Estates, a limited partnership, seeking an injunction and damages, resulting from an alleged violation of a protective covenant contained in a lease agreement. Defendants Berman and Perry Brothers answered that the protective covenant violated the Texas antitrust statutes. Berman and Perry Brothers filed a counterclaim and cross-claim against plaintiff, intervenors, and the other defendants. Berman and Perry Brothers sought actual and punitive damages resulting from a violation of the Texas antitrust statutes. Plaintiff and intervenors, City Products, Z. S., Inc. and Zeno R. Smith, and defendants, Freda Levy, I. A. Loeb and wife, Fannie Loeb, Morris Siegel and wife, Helen Siegel, and William Sheridan and wife, Hattie Sheridan, were granted partial summary judgments as to the claim for damages asserted by Berman and Perry Brothers. I. A. Loeb died during trial and the court severed the claims asserted against and by him. Following a jury trial, the court rendered judgment enjoining defendants, Berman and Perry Brothers, from leasing or permitting to be used, for a variety store, a certain building owned by Berman and leased to Perry Brothers. The jury found punitive, but no actual, damages. The court awarded City Products $30,000, and Z. S., Inc., $15,000, punitive damages against Perry Brothers. The partial summary judgments were merged into and became a part of the final judgment.

Perry Brothers and Berman have appealed. We reverse and render in part, and reverse and remand in part.

■ City Products is the "Tenant" of a building located at 185 East Second Street in Colorado City. For several years, a "Ben Franklin" store has been located in the building. The current franchisee-subtenant is intervenor, Z. S., Inc., whose president and principal stockholder is intervenor, Zeno R. Smith.

The original lease agreement contained the following "protective" covenant:

That the landlord will not, during the term hereof, or any renewal or extension hereof, lease or permit to be used, any portion of the building in which the demised premises are situated or any portion of *any other building or premises controlled by the landlord* located within one thousand (1,000) feet of the herein demised premises, for any business similar to the business of the Tenant, that is to say, for any variety store, or any business conducted under the name of a five and ten cent store, five cents to one dollar store or similar name. (Emphasis added)

On January 4, 1971, the conditions of the original lease, as amended, were ratified, and the term of the lease was extended to April 30, 1980, by a supplemental agreement. The supplemental agreement designated as "Landlord" the following: "Freda Levy, a widow, I. A. Loeb and Fannie Loeb, his wife, Morris L. Siegel and Helen Siegel, his wife, William Sheridan and Hattie Sheridan, his wife, and Max Berman and Sydell Berman, his wife, a Limited Partnership, doing business as A & I Levy Estates." Each of the named parties signed the agreement as a "General Partner." No limited partnership existed. Helen Siegel and Hattie Sheridan, wives of Morris Siegel and William Sheridan, respectively, had each inherited an interest in the leased premises. It is undisputed that all parties who signed the lease as "Landlord," other than Morris Siegel and William Sheridan, owned an interest in the premises.

Across the street from the "Ben Franklin" building is the "Max Berman" building. On September 6, 1974, Max Berman and wife, Sydell Berman, owners of the Max Berman building and part owners of the Ben Franklin building, leased the Max Berman building to Perry Brothers. The Max Berman building is located within 1,000 feet of the Ben Franklin building. The jury found that the premises were used by Perry Brothers as a "variety store."

Perry Brothers and Berman argue that the protective covenant, copied above, contained in the lease agreement, which is the basis of the suit filed by plaintiff and intervenors, is void. We agree.

Texas statutes prohibit "trusts, monopolies, and conspiracies in restraint of trade." Section 15.02, Business and Commerce Code, provides:

(b) A "trust" is a combination of capital, skill or acts by two or more persons to

(1) restrict, or tend to restrict, trade, commerce, aids to commerce, the preparation of tangible personal property for market or transportation, or the free pursuit of a lawful business; . . .

. . . . .

(3) prevent or lessen competition in (A) the manufacture, transportation, sale or purchase of tangible personal property;

. . . . .

(7) refrain from engaging in business, or from buying or selling tangible personal property, partially or entirely in this state.

Section 15.04 of the Business and Commerce Code expressly provides that a "trust," as defined in Section 15.02 is illegal and an agreement violating such prohibition is "void and unenforceable in law or equity."

It is clear that the purpose of the protective covenant in issue is to prevent or lessen competition with the "Tenant" in the sale of tangible personal property. The provision violates the statutory prohibitions, unless it fits within an exception. Plaintiff and intervenors contend the protective covenant is valid since all parties signing the agreement as general partners have "an interest" in the property.

Our Supreme Court in *Schnitzer v. Southwest Shoe Corporation,* 364 S.W.2d 373 (Tex.1963) discussed the exception urged by plaintiff and intervenors. In *Schnitzer,* two owners of adjoining buildings, Schnitzer and his father-in-law, Alpard, agreed to operate their separately owned properties as an integral unit and were interested in developing the properties into a shopping center. Schnitzer leased the premises he owned to Southwest Shoe Corporation. The lease contained a provision giving Southwest Shoe exclusive right to sell shoes in the building located on Schnitzer's premises and in buildings of other owners who joined Schnitzer in ratifying the exclusive occupancy provision. Alpard, who owned no interest in the Schnitzer premises, ratified the exclusive occupancy restriction by signing the lease with Schnitzer. Thereafter, Alpard leased the premises he owned to a lessee who leased to a subtenant who sold shoes as a part of his business. The Supreme Court noted that Alpard had "an interest" in the Schnitzer property, but held that he owned no "property interest" in the premises, and the protective covenant was void. The court stated:

The clear purpose of the contract between Schnitzer, Alpard and Southwest was to create and carry out restrictions in the free pursuit of the business of selling shoes on the premises owned by Schnitzer and Alpard, and, to that extent, to prevent or lessen competition with Southwest in the sale of that merchandise. Unless the contract of the parties comes within some recognized exception to the statutory prohibition, it is in violation of the statute as a matter of law.

The rigidity of our anti-trust, monopoly and restraint of trade statutes has undoubtedly been softened in certain exceptional situations. See *State v. Gulf Refining Co.,* Tex.Civ.App., 279 S.W. 526, 530, writ refused, and cases there cited. One of the exceptional situations is that in which an owner, lessor or one in con-

trol of premises agrees with another person that the other person shall have an exclusive right or privilege in or on the premises or that the other person will sell on the premises only the products or merchandise of the owner or lessor. *Fort Worth & D.C. Ry. Co. v. State,* 99 Tex. 34, 87 S.W. 336, 70 L.R.A. 950; *Celli & Del Papa v. Galveston Brewing Co.,* Tex.Com. App., 227 S.W. 941; *Edwards v. Old Settlers' Ass'n.,* Tex.Civ.App., 166 S.W. 423, writ refused; *Redland Fruit Co. v. Sargent,* 51 Tex.Civ.App. 619, 113 S.W. 330, no writ history; *Cox v. Humble Oil & Refining Co.,* Tex.Com.App., 16 S.W.2d 285. For discussions of cases of this type, see 3 T.L.R. 349–362; 6A Corbin on Contracts 62, § 1389; 90 A.L.R. 1449. Contracts or agreements of this character are upheld when they are collateral or incidental to a lawful lease or grant of premises in which the lessor or grantor has a *property interest.* (Emphasis added)

After stating that it is the duty of courts to enforce statutes as written by the Legislature, the court added:

> If the agreement before us related only to the premises owned and leased by Schnitzer the exclusive right given Southwestern would be valid as collateral and incidental to the lease of Schnitzer's premises. But if two landowners may validly enter into this type of agreement with a lessee of premises of one only, so could a dozen or all in a given area. We are unwilling thus to extend this exception to the anti-trust laws. . . .

In *Kroger Company v. J. Weingarten, Inc.,* 380 S.W.2d 145 (Tex.Civ.App.—Houston 1964, writ ref'd n.r.e.), the court held that a restrictive agreement was void because one of the signers, Sharp, owned no "property interest" in the premises in question. Sharp was unquestionably vitally "interested" in the premises which were owned by a corporation, Center Corporation, whose stock was owned by two irrevocable trusts established for Sharp's daughters. When Center Corporation purchased the premises, Sharp personally guaranteed payment of a $794,000 note. Also, Sharp and his wife had loaned Center Corporation a substantial amount of money. The court noted that Sharp had no "vendible" interest in the premises and that the agreement imposed restrictions upon property whether owned or later acquired by Center or Sharp. The court said:

> All of the stock in Center Corporation was owned by the two irrevocable trusts which had been established for Sharp's daughters with Bank of the Southwest as trustee. It is true that the trustee generally approved sales and leases and other transactions recommended to the trustee by Sharp or his righthand man, Tucker. It is equally true, however, that Center Corporation was not required to follow their recommendations or suggestions with respect to such business matters.

> · · ·

The court added:

> It is our view that Sharp never had any "property interest" in Center Corporation, the leasehold or the Kroger tracts. By reason of his affection for his daughters he naturally had an interest in the welfare of Center Corporation and in the Trusts and in the development of Oak Forest Addition generally. He had guaranteed payment of a large note executed by Center Corporation and he and his wife had lent money to the corporation. This, however, did not give him a property interest in the corporation or in the property of the corporation. Not until a default should occur in the payment of such note, and Sharp is required to make good his guarantee of payment, will he become subrogated to the foreclosure rights of the mortgagee or acquire any sort of property interest in the corporation's property.

In distinguishing between an "interest" in property, and the owning of a "property interest," the court said on motion for rehearing:

> [Sharp] had no legal control over such corporation or property interest therein. He acted for the corporation in various business matters and the corporation usually stamped its approval on what he did.

In one sense he acted as an agent of the corporation in various transactions having to do with the property belonging to the corporation. He did not, however, act as an agent of the corporation with respect to his own property or that of Realty Corporation, nor did he act as an agent for Center Corporation when it executed by its vice president, Mr. Weintraub, the lease and the restrictions agreement.

. . .

In *Karam v. H. E. Butt Grocery Company,* 527 S.W.2d 481 (Tex.Civ.App.—San Antonio 1975, writ ref'd n.r.e.), *Schnitzer* and *Kroger* were distinguished as follows:

Neither *Schnitzer* nor *Kroger* is in point. The exceptions relating to restrictive covenants made as incidents of transactions involving the transfer of interests in land are applicable only where the use-limiting promise is made by either the transferor or transferee and relates to land owned by the covenantor or to land in which he has an interest. The vice in both *Schnitzer* and *Kroger* lay in the fact that covenant in question attempted to restrict use of land owned by one who was neither a transferor, as grantor or lessor, or transferee, as grantee or lessee, in the transaction to which the restriction was incidental. . .

We think it is clear that neither Morris Siegel nor William Sheridan, who signed the lease in question, owned a "property interest" in the premises. Helen Siegel and Hattie Sheridan owned as their "separate property" an interest in the premises. Tex.Const. art. 16, § 15; Tex. Family Code Ann. § 5.01. The respective women had the sole management, control, and disposition of their separate property interest in the premises. Tex.Family Code Ann. § 5.21. We do not consider the classification of the rents and revenues from the property to be controlling; however, we note that Helen Siegel and Hattie Sheridan had the sole management, control and disposition of the rents and revenues from the premises. Tex.Family Code Ann. § 5.22. Morris Siegel and William Sheridan did not sign the lease as agents or in any representative capacity. Morris Siegel and William Sheridan signed the supplemental lease agreement as "General Partners" of a nonexistent limited partnership.

It is true that Morris Siegel and William Sheridan, as husbands, respectively, of Helen Siegel and Hattie Sheridan, had "an interest" in the Ben Franklin building, as did Alpard in *Schnitzer* and Sharp in *Kroger.* But neither husband owned a "property interest" in, or legally "controlled," the premises. It is obvious from *Schnitzer* and *Kroger* that legal control is required.

We hold that Morris Siegel and William Sheridan owned no "property interest" in the Ben Franklin building when they signed the agreement. By signing the agreement, they contracted to restrict competition in connection with a lease where they owned no property interest in the premises. The restriction affected not only property they presently owned, but also property they might acquire in the future. If their marriages should terminate, the agreement could improperly restrict property they might thereafter acquire. We think the protective covenant, made the basis of plaintiff's and intervenors' suit, is void and unenforceable.

Plaintiff and intervenors contend that all defendants are estopped, as found by the jury, to contend that any party who signed the lease as "Landlord" did not own or claim a partnership interest in the Ben Franklin building. We disagree. We note that Perry Brothers, the only defendant charged with punitive damages, could not be estopped since it did not sign the lease. More significantly, Section 15.04(b) of the Business and Commerce Code expressly states that an "agreement violating the prohibition against a . . . trust . . is void and unenforceable in law or equity." Furthermore, as a general rule, an agreement that is void as against public policy or because prohibited by law, cannot, as between the parties, be rendered valid by invoking the doctrine of estoppel. *Farha v. Elam,* 385 S.W.2d 692 (Tex.Civ.App.—Fort Worth 1964, writ ref'd n. r. e.); *Perkins v.*

*Lambert,* 325 S.W.2d 436 (Tex.Civ.App.—Austin 1959, writ dism.). Also, we do not think that the doctrine of estoppel can be invoked to "nullify" the property ownership requirement, since the Texas antitrust statutes are for the benefit of the general public. See *Missouri Pacific Railroad Company v. American Statesman,* 552 S.W.2d 99 (Tex. 1977). The agreement in the instant case is prohibited by law because a party having no "property interest" has agreed to restrict competition in violation of the Texas antitrust statutes.

■ Plaintiff's and intervenors' contention that Berman and Perry Brothers engaged in a civil conspiracy was based upon the premise, as disclosed by the pleadings and special issues submitted, that the protective covenant contained in the lease of the Ben Franklin building was valid. We have held it is void. No unlawful purpose was accomplished by the leasing of the Max Berman building to Perry Brothers. No unlawful means were used. The parties did not engage in an actionable civil conspiracy. *Carruth v. First National Bank of Fort Worth,* 544 S.W.2d 678 (Tex.Civ.App.—Eastland 1976, writ ref'd n. r. e.).

We hold that the trial court erred in granting summary judgments in favor of City Products (plaintiff), Z. S., Inc. and Zeno R. Smith (intervenors), Freda Levy, Fannie Loeb, Morris Siegel and wife, Helen Siegel, and William Sheridan and wife, Hattie Sheridan (Levy defendants), in connection with the claim of Berman and Perry Brothers for damages resulting from an alleged violation of the Texas antitrust laws.

■ City Products and intervenors contend there is no private cause of action for a violation of the Texas antitrust statutes. We disagree. *North Texas Gin Co. v. Thomas,* 277 S.W. 438 (Tex.Civ.App.—Dallas 1925, writ ref'd); *Frels v. Consolidated Theatres,* 134 S.W.2d 369 (Tex.Civ.App.—San Antonio 1939, writ dism. jdgmt. cor.); *Texas Public Utilities Corporation v. Edwards,* 99 S.W.2d 420 (Tex.Civ.App.—Austin 1936, writ dism'd); 38 Tex.Jur.2d Monopolies, Combinations, etc. § 26.

The authors, Dan Moody and Charles B. Wallace, in an article discussing enforcement of Texas antitrust laws, state:

Violations of the antitrust laws may be punished by the State of Texas by civil and criminal sanctions, *and persons who have been damaged by such violations may maintain actions for the recovery of the damages sustained by them as a result of such violations.* (Emphasis added)

Leading Article, *Texas Antitrust Laws and Their Enforcement—Comparison with Federal Antitrust Laws,* 11 Sw.L.J. 1 (1957).

■ Levy defendants argue the court properly granted the summary judgment against Berman, because Berman, who signed the Ben Franklin building lease agreement, was *in pari delicto* with the Levy defendants. That defense would not bar recovery for damages incurred after Berman withdrew from the illegal arrangement. *Gaines v. Carrollton Tobacco Board of Trade, Inc.,* 386 F.2d 757 (6th Cir. 1967); *Connecticut Importing Co. v. Frankfort Distilleries,* 101 F.2d 79 (2d Cir. 1939); *Victor Talking Mach. Co. v. Kemeny,* 271 F. 810 (3d Cir. 1921); Note, *Antitrust Laws, The In Pari Delicto Doctrine Is Not a Defense to a Private Antitrust Action If the Parties Are Not Equally Responsible for the Violation,* 47 Tex.L.Rev. 322 (1969); Comment, *In Pari Delicto and Consent as Defenses in Private Antitrust Suits,* 78 Harv.L.Rev. 1241 (1965).

■ The summary judgment proof fails to establish as a matter of law that there is no genuine issue of fact as to one or more of the essential elements of the cause of action for damages filed by Berman and Perry Brothers. *Gibbs v. General Motors Corporation,* 450 S.W.2d 827 (Tex.1970).

That portion of the trial court's judgment awarding summary judgment to City Products, Z. S., Inc., Zeno Smith, Freda Levy, Fannie Loeb, Morris Siegel and wife, Helen Siegel, and William Sheridan and wife, Hattie Sheridan, is reversed and remanded. The judgment in all other respects is reversed and rendered.

RALEIGH BROWN, Justice, dissenting.

I dissent. I cannot agree that the execution of the lease agreement by Morris Siegel and William Sheridan, whose wives owned a property interest in the premises, made the protective covenant void.