**POUNDS PHOTOGRAPHIC LABS, INC., Plaintiff-Appellee,**

v.

**NORITSU AMERICA CORP., et al., Defendants,**

**Back-In-A-Flash, Ltd., et al., Defendants-Appellants.**

No. 86–1340.

United States Court of Appeals, Fifth Circuit.

June 15, 1987.

Rehearing and Rehearing En Banc Denied July 16, 1987.

Jack N. Price, Austin, Tex., for Back-In-A-Flash, Ingraham, McNaron.

David L. Orr, Michael G. Burk, McGinnis, Lochridge, Kilgore, Austin, Tex., for plaintiff-appellee.

Before POLITZ, JOLLY and HIGGINBOTHAM, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Back-In-A-Flash, Ltd. ("BL ˜"), Hubert Ingraham, and Gerald McNaron appeal from the district court's judgment awarding Pounds Photographic Labs, Inc. ("Pounds Labs"), damages in the amount of $170,000 for injuries caused by the appellants' violations of the Texas antitrust statutes. Because we conclude that the filing of Pounds Labs' suit was timely and because the district court's judgment is supported by both law and evidence, we affirm.

I

Danny Pounds established Pounds Labs in Austin, Texas, in 1976 to engage in professional photofinishing. Sometime afterwards, Elwinger, a salesman representing Noritsu America Corp. ("Noritsu") made a sales call on Danny Pounds and was referred to Ingraham, a Pounds Labs

employee, to whom Elwinger described Noritsu's Quick Service System (QSS).[1] Ingraham and McNaron, another Pounds Labs employee, were interested in the system but Danny Pounds was not.

In August 1980, Ingraham and McNaron resigned from Pounds Labs and the next month, purchasing Noritsu's QSS, they opened their first mini-lab, under the name "Back-in-a-Flash." By May 1982, they had six locations in Austin and ten by the time of trial.

After a favorable article about QSS appeared in *Parade* magazine in October 1980, Noritsu developed a backlog, delaying delivery by twelve to eighteen months in January 1981. During this time, Noritsu created an "open city" policy, giving immediate shipment to labs to be opened in cities with no other QSS lab. Moreover, at about this time (November 1980), Noritsu had circulated a memo stating that it would give "a two year guarantee of non-compete location" to purchasers of QSS.

In March 1981, Pounds called Elwinger about buying a QSS and was told that delivery would be in twelve to eighteen months, but that he could get priority delivery by shipping to an "open city" such as El Paso. Pounds then ordered five units. In April, Elwinger scheduled delivery for one Pounds unit in El Paso and another in New Mexico. Elwinger later heard, however, that Pounds was going to take delivery of the unit in El Paso and then ship it on his own to Austin, although Pounds denied this. Elwinger then stated, "If I find the unit is going anywhere other than El Paso, I'll do everything in my power to delay shipment, delay installation and training and voiding the warranty … I don't play games."

The "open city" policy was dropped in January or February 1982, and Elwinger was transferred in January 1982 and replaced by Oliver. In July 1982, Pounds ordered a unit from Oliver, which was delivered in October 1982, and installed in Austin. Pounds has since opened units in

other cities under the names of "Photo House" and "Texas One Hour."

In January 1984, Oliver, who had become friendly with Pounds, gave Pounds documents from Elwinger's files. Two were proposals for a joint venture between Elwinger, Ingraham and McNaron. One was a letter from Fry, the president of United Bank of Texas, dated October 22, 1982, to Noritsu, relating to a loan from the bank to BIAF. In the letter, the bank stated: "It is our understanding that based on the sales of [BIAF], that you intend to grant them some exclusivity to your product in the Austin market." Noritsu responded by denying such a policy, noting that it was illegal, but stating that Noritsu was reducing sales efforts in cities where it had sold units.

Since Pounds obtained his QSS units, all of his operations, except that in Austin, have been successful. He blames the lack of success of the Austin operation on BIAF's two-year head start with its QSS units.

## II

On August 3, 1984, Pounds Labs filed suit against Noritsu, Elwinger, BIAF, Ltd., Ingraham, McNaron and BIAF, Inc., in federal district court, alleging (1) conspiracy to monopolize, (2) attempt to monopolize, (3) monopolization in violation of section 2 of the Sherman Act, (4) restraint of trade in violation of section 1 of the Sherman Act, (5) "trust" and conspiracy in restraint of trade in violation of the pre–1983 Texas Antitrust Statutes, and (6) tortious interference with prospective business relationships. After a trial, the jury returned a verdict rejecting Pounds Labs' contention that "mini-lab" or "one-hour" photofinishing in the Austin metropolitan area is a relevant market or submarket, and the contentions of monopolization and attempted monopolization of such market, finding that the defendants had not conspired to monopolize the market or to unreasonably restrain trade, and that BIAF, Ingraham, and McNaron had not wrongfully inter-

---

**1.** QSS is a processing and printing system for color film that develops the film in less than one hour, in mass production and without using a dark room.

fered with Pounds Labs' prospective contractual relationship with Noritsu. The jury found, however, that Noritsu, Elwinger, Ingraham, and McNaron had entered into a "trust," that Elwinger, Ingraham, and McNaron had entered into a conspiracy in restraint of trade under the Texas statutes, that Pounds Labs had sustained injury thereby, and awarded damages in the amount of $170,000.

Noritsu, Elwinger, BIAF, Ingraham and McNaron appealed. Since then, however, Noritsu and Elwinger have settled, leaving BIAF, Ingraham and McNaron as the appellants in this case. Hence the term "appellants" as used in the body of this opinion refers only to BIAF, Ingraham and McNaron.

### III

The appellants raise half a dozen challenges to the district court's judgment. They argue that: (1) Pounds Labs' state antitrust action was time-barred; (2) the Texas antitrust statutes did not apply to this case; (3) the evidence presented at trial did not support a finding of liability on the part of the appellants; (4) damages were not available in this case; (5) the Texas antitrust statutes were preempted by federal law, and (6) there was insufficient evidence to support the damage award in this case. We reject the first five arguments made by the appellants and hold that the sixth was not properly preserved on appeal.

### IV

We first address the statute of limitations issue. Pounds Labs' state antitrust action was brought under the Texas antitrust statutes, Tex.Bus. & Comm.Code Ann. §§ 15.02 and 15.03 (Vernon 1968), as they existed before they were amended on August 29, 1983, to provide for a four-year limitation period. 1983 Tex.Gen.Laws, Ch. 519 § 1 at 3010. All parties agree that

Texas courts apply statutes as they existed at the time the action accrued. *See Riverside National Bank v. Lewis,* 603 S.W.2d 169, 172 (Tex.1980). The pre-August 1983 version of the Texas antitrust statutes specified no limitations period. The question is which statute of limitations to apply. The appellants argue that a two-year statute of limitations governs under the old antitrust statutes and that therefore Pounds Labs' claims are barred. Pounds Labs, on the other hand, maintains that a four-year limitations period applies to its claims, and they are not barred. Pounds Labs is correct.

At the time Pounds Labs' cause of action accrued, there were three general Texas statutes of limitations that were arguably pertinent to Pounds Labs' state antitrust claims.[2] A two-year statute, Tex.Rev.Civ. Stat.Ann. art. 5526, applied to various actions, most of them in tort.[3] A four-year statute applied to "actions for debt." Tex. Rev.Civ.Stat.Ann. art. 5527. A four-year statute, Tex.Rev.Civ.Stat.Ann. art. 5529, a residual provision, established a limitation period for actions not otherwise provided for.[4]

Pounds Labs' state antitrust cause of action was created by statute. Both this court and Texas courts have held that under Texas law liability created by statute is an action for debt for limitations purposes. *McGuire v. Baker,* 421 F.2d 895, 898 (5th Cir.1970); *Rose v. First State Bank,* 122 Tex. 298, 59 S.W.2d 810, 811 (1933); *Uhler v. Todd Houston Shipbuilding Corp.,* 198 S.W.2d 631, 632 (Tex.Civ.App.1946). In particular, this court has held that for limitations purposes under Texas law, an antitrust claim brought under the federal antitrust statutes (at a time when these statutes did not have their own statute of limitations) was an action for debt. *Green v. Wilkinson,* 234 F.2d 120 (5th Cir.1956).

---

**2.** These statutes remain in effect today; *see* note 4.

**3.** *See* note 5.

**4.** These statutes were repealed by Acts, 1985, 69th Leg.Ch. 959 § 9(1) eff. Sept. 1, 1985, and the successor statutes are codified respectively as Tex. Code Ann.Civ.Pract. & Remed. §§ 16.-003, 16.004, and 16.051.

Although it is true, as the appellants point out, that these prior decisions held that the two-year statute of limitations applied to actions based upon statutory liability, this was because prior to 1979, two kinds of action for debt were recognized for limitations purposes: actions for debt where the indebtedness was evidenced by a written contract, and actions for debt where it was not. Claims falling under the first category were governed by a four-year statute of limitations, Tex.Rev.Civ. Code Ann. art. § 5527 (Vernon 1958), while claims under the second category were governed by a two-year statute of limitations, Tex.Rev.Civ.Code Ann. art. 5526(4) (Vernon 1958). Claims based on statutory liability were considered actions for debt where the indebtedness was not evidenced by written contract. *Rose*, 59 S.W.2d at 811; *Uhler*, 198 S.W.2d at 632, and were therefore governed by the two-year statute of limitations. Effective August 17, 1979, however, that statute was amended to exclude its applicability to actions for debt.[5] After that date all actions for debt were governed by a four-year statute of limitations, Tex.Rev.Civ.Stat.Ann. art. 5529.

Since Pounds Labs' cause of action accrued after August 27, 1979, its state antitrust claims were governed for limitations purposes by the four-year statute of limitations then applicable for all actions for debt.

The appellants argue that since Pounds Labs' state antitrust claims were similar in nature to business tort claims, such as unfair competition or tortious interference with contractual relations, the two-year statute of limitations applicable to such tort claims should be held applicable to Pounds Labs' claims as well. Although there are similarities between Pounds Labs' state antitrust claims and certain tort causes of action in other respects, there remains an important distinction for limitations purposes: tort claims are grounded on common-law principles, while Pounds Labs' claims were created by state statute. As discussed earlier, under Texas law, claims based on statutorily created liability are subject to the limitations period applied to actions for debt.

We conclude that, based on the foregoing precedent and our analysis, a four-year

5. Prior to August 27, 1979, section 5526 read as follows:

There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

1. Actions of trespass for injury done to the estate or the property of another.
2. Actions for detaining the personal property of another, and for converting such property to one's own use.
3. Actions for taking or carrying away the goods and chattels of another.
4. *Actions for debt where the indebtedness is not evidenced by a contract in writing.* [Emphasis added.]
5. Actions upon stated or open accounts, other than such mutual and current accounts as concern the trade of merchandise between merchant and merchant, their factors or agents. In all accounts, except those between merchant and merchant, as aforesaid, their factors and agents, the respective times or dates of the delivery of the several articles charged shall be particularly specified, and limitation shall run against each item from the date of such delivery, unless otherwise specially contracted.
6. Action for injury done to the person of another.

7. Action for injury done to the person of another where death ensued from such injury; and the cause of action shall be considered as having accrued at the death of the party injured.
8. Actions of forcible entry and forcible detainer.

After August 27, 1979, section 5526 read:

There shall be commenced and prosecuted within two years after the cause of action shall have accrued, and not afterward, all actions or suits in court of the following description:

1. Actions of trespass for injury done to the estate or the property of another.
2. Actions for detaining the personal property of another, and for converting such property to one's own use.
3. Actions for taking or carrying away the goods and chattels of another.
4. Action for injury done to the person of another.
5. Action for injury done to the person of another where death ensued from such injury; and the cause of action shall be considered as having accrued at the death of the party injured.
6. Actions of forcible entry and forcible detainer.

statute of limitations applies to Pounds Labs' state antitrust claims and therefore that those claims were timely.

## V

■ The appellants argue that the Texas antitrust statutes do not apply to the facts of this case. We disagree. The Texas courts have held that the Texas antitrust statutes do not apply to agreements that relate wholly to interstate commerce. *Albertype Co. v. Gust Feist Co.*, 102 Tex. 219, 114 S.W. 791, 792 (Tex.1909); *Elray, Inc. v. Cathodic Protection Service*, 507 S.W.2d 570, 573 (Tex.Civ.App.1974). However, for purposes of applying the Texas antitrust statutes, the Texas courts have divided transactions into subparts dealing, respectively, with interstate commerce and with intrastate commerce and have held that even where the overall transaction primarily affected interstate commerce, the Texas antitrust statutes apply if a component of the transaction implicates intrastate commerce. *See Elray*, 507 S.W.2d at 573. The appellants maintain that the challenged conduct in this case involved only interstate commerce since the conduct dealt with an out-of-state manufacturer's alleged agreement to sell and ship from a point outside the state to a single customer in a single city within the state. An examination of the evidence in this case shows, however, that the challenged conduct also involved intrastate commerce.

The evidence in the record showed that Elwinger imposed a restriction on the movement of a QSS unit from El Paso to Austin, clearly an impediment on intrastate commerce. There is also evidence in the record showing that a primary purpose and effect of the actions of the appellants and Elwinger was to prevent Pounds from establishing a minilab specifically in Austin, thereby restricting trade or lessening competition in the Austin photo lab business. Thus, the conduct of the appellants had a discrete intrastate impact. We therefore reject the appellants' claim that the Texas antitrust statutes were inapplicable to this case.

## VI

The appellants argue that there was insufficient evidence to support a finding that the appellants violated the Texas antitrust statutes. We believe that the evidence in the record demonstrates otherwise.

The familiar standard of review we apply to jury findings of fact was first articulated in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) (en banc). Under *Boeing*, a jury verdict will be upheld if the evidence is such that it allows reasonable and fair-minded men in the exercise of impartial judgment to reach the conclusion reached by the jury. 411 F.2d at 374–75. Applying this standard to the facts of this case, we find sufficient evidence to sustain the jury's verdict.

The appellants, along with their codefendants Elwinger and Noritsu, were charged with entering into a "trust" and a "conspiracy" in restraint of trade in violation of Tex.Bus. & Comm.Code Ann. § 15.-04 (Vernon 1968) (pre–1983). A "trust" is defined broadly to include a combination: (1) intended to restrict or tending to restrict, trade or the free pursuit of lawful business; (2) intended to prevent or lessen competition in the sale of tangible personal property; or (3) that refrains from selling tangible personal property. Tex.Bus. & Comm.Code Ann. § 15.02(b)(1), (3) and (7). A conspiracy in restraint of trade includes an agreement between two or more persons engaged in buying or selling tangible personal property not to buy or sell to another person tangible personal property. Tex.Bus. & Comm.Code Ann. § 15.03(a)(1).

■ There is evidence both to support the existence of a trust and a conspiracy in restraint of trade and to support a finding that the appellants were engaged in and liable for such conduct.

Documentary evidence in the form of a Noritsu company memorandum supports a finding of a "trust" and a conspiracy in restraint of trade. The company memorandum shows that Noritsu had a policy of giving purchasers of QSS units a two-year guarantee of noncompetition in their loca-

tions. There is also a letter to Noritsu from Robert Fry, the banker for the appellants Ingraham and McNaron, stating: "It is our understanding that based on sales to Back in A Flash, that you intend to grant them some exclusivity to your product in the Austin market." Although the appellants denied that this letter reflected their understanding, the letter was relevant evidence and the jury was entitled to accept or reject the appellants' disavowals and to give the letter such weight as it deemed appropriate. Furthermore, Noritsu and Elwinger followed a policy of delaying shipping to Austin and other similar cities in which customers, including the appellants, had already made purchases of QSS equipment. The jury was free to weigh and evaluate this evidence in the context of the case and conclude from this and the other evidence that a combination existed to refrain from selling personal property, to restrict trade and to lessen competition.

There is evidence in the record to show that the appellants before us were involved in this "trust" and conspiracy in restraint of trade. Evidence in the record supports the following set of facts: a close relationship existed among Elwinger, Ingraham and McNaron; Ingraham and McNaron sought and welcomed any help that they could get that would shield their newly formed company from competition; someone (and the jury could reasonably conclude that it was Ingraham, McNaron or both) advised the banker for Ingraham and McNaron that they had an agreement from Elwinger and Noritsu to grant them "some exclusivity in the Austin market"; and Ingraham and McNaron proposed to make Elwinger a business partner.

The jury, applying its common sense in evaluating the self interest of these business partners, could have reasonably understood Elwinger's hostility to Pounds as evidence that Elwinger, McNaron and Ingraham had agreed, at least tacitly, that it was important to keep Pounds out of the Austin market. Indeed, Elwinger admitted that he sought to protect the appellants from competition, and McNaron testified that he and Ingraham willingly accepted the assistance of Elwinger with respect to protection from competition.

Finally, as evidence of the clear intent of McNaron and Ingraham, and hence BIAF, to keep Pounds out of the Austin market, the record shows that upon learning that Oliver (the Noritsu representative who replaced Elwinger) had agreed to sell a QSS unit to Pounds, Ingraham sought to prevent the sale by threatening to purchase units from other manufacturers if the sale went through.

We do not dispute the fact that, as the appellants point out, there are innocent explanations for much of the conduct of the appellants and their codefendants, and there is evidence supporting the appellants' contention that their conduct was lawful. But whether evidence that is subject to reasonable interpretations proves innocence or culpability is for the jury to decide, and the jury having exercised its prerogative, we hold the evidence is sufficient to establish liability under the Texas antitrust statutes against the appellants for joining with Elwinger and Noritsu to prevent Pounds from competing in the Austin market by refusing to sell him the QSS for his business in Austin.

### VII

The appellants argue that damages were not available under the pre–1983 versions of the Texas antitrust statutes, and that therefore the award of damages in this case should be reversed. We reject this argument.

The appellants argue that under the pre–1983 Texas antitrust statutes, the sole contemplated relief is invalidation of agreement in violation of those statutes, and that therefore damages are not available as a remedy. Their arguments notwithstanding, there is specific authority holding that damages may be recovered in civil actions for violations of the pre–1983 Texas antitrust statutes. *Berman v. City Products Corp.*, 579 S.W.2d 313, 319 (Tex.Civ.App. 1979), *rev'd on other grounds*, 610 S.W.2d 446 (Tex.1981); *Frels v. Consolidated Theatres*, 134 S.W.2d 369 (Tex.Civ.App.1939). In *Berman*, the court noted that while the

state could enforce its antitrust laws with civil and criminal sanctions, private plaintiffs could also maintain actions for damages. *Berman,* 579 S.W.2d at 319. The only authority that the appellants cite to the contrary, *Green v. Temple Stuart Co.,* 408 S.W.2d 744, 746 (Tex.Civ.App.1966), would not preclude the award of damages against the appellants in this case. In *Green,* the court stated that although damages would not be available in cases where one or more persons simply refused to have business dealings with another person, an action could be maintained (and hence damages would be available) where the defendants sought to influence a third party to refrain from business dealings with the plaintiff. 408 S.W.2d at 746. Such a situation is presented in this case since Pounds Labs charges, and there is evidence to the effect that the appellants sought to influence Noritsu to refrain from dealing with Pounds Labs.[6] We therefore conclude that damages were available against the appellants in this case.

## VIII

■ The appellants argue that the pre–1983 Texas antitrust statutes upon which Pounds Labs' claims are based are preempted by the Sherman Act. We disagree.

There is a heavy presumption against finding a state law preempted by a federal antitrust law. A "state statute should be struck down on preemption grounds only if it mandates or authorizes conduct that necessarily constitutes a violation of the antitrust laws in all cases, or if it places irresistable pressure on a private party to violate the antitrust laws in order to comply with the statute." *Fisher v. City of Berkeley, Cal.,* 475 U.S. 260, 106 S.Ct. 1045, 1048, 89 L.Ed.2d 206 (1986). Although the appellants argue that compliance with Tex-

as antitrust laws would impose burdens on interstate commerce, they do not argue that the Texas antitrust laws required them to violate the Sherman Act. A state is not generally prohibited from giving effect to its antitrust laws because the regulation affects interstate commerce. *Standard Oil Co. v. Tennessee,* 217 U.S. 413, 422, 30 S.Ct. 543, 544, 54 L.Ed. 817 (1910).

The Texas courts have rejected federal preemption challenges to the Texas antitrust statutes, holding that these statutes are supplementary to the federal regulatory scheme. *Elray, Inc.,* 507 S.W.2d at 573–74; *State v. Southwest Texas Chapter of National Electrical Contractors Ass'n,* 358 S.W.2d 711, 714 (Tex.Civ.App.1962). We see no reason to conclude differently.

## IX

■ The appellants challenge the sufficiency of the evidence to support the damage award against them. This issue, however, has not been properly preserved since the appellants failed to raise it in their motion for judgment notwithstanding the verdict. Failure to challenge the sufficiency of the evidence in a motion for a new trial or a motion for judgment notwithstanding the verdict will result in waiver of the issue on appeal, *Bueno v. City of Donna,* 714 F.2d 484, 493–94 (5th Cir.1983), except in exceptional circumstances, which are not present here. Exceptional circumstances are present when a pure question of law is involved and the asserted error is so obvious that the failure to consider it would result in a miscarriage of justice. *Payne v. McLemore's Wholesale & Retail Stores,* 654 F.2d 1130, 1145 (5th Cir.1981). Because the appellants' challenge to the sufficiency of the evidence supporting damages involves factual matters, and hence does not involve pure questions of law, we decline to consider it.[7]

---

**6.** Specifically, there is direct evidence showing that Ingraham threatened to buy equipment from other manufacturers if Noritsu sold a QSS unit to Pounds. The conclusion can also be inferred from the circumstantial evidence of the hostility of Elwinger to Pounds' Austin operations while he, Ingraham and McNaron were prospective business partners.

**7.** Moreover, because Pounds Labs presented evidence of damages through an expert witness who was an economist (in the form of a study of what revenues Pounds Labs would have been able to obtain in the absence of the antitrust violations), we do not believe that sustaining the damage award will result in a miscarriage of justice.

X

For the reasons discussed earlier, the judgment of the district court is

AFFIRMED.